UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

```
USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #: _____
DATE FILED:  _3/31/2021____
```

THOMAS M. MORAN,

                    Plaintiff,

          -against-                                              19 Civ. 3079 (AT)

MTA METRO-NORTH RAILROAD COMPANY, P.O.                           **ORDER**
NICHOLAS STRYPE (individual capacity), P.O.
DOUGLAS COHEN (individual capacity), PO LUIGI
SEIDITA (individual capacity), PO JASON NANDOO
(individual capacity), PO JOSEPH TERACCIANO
(individual capacity), and PO RICHARD DOE (Full
names and number of whom are unknown at present, and
other unidentified members of the MTA Police
Department in their individual capacities),

                    Defendants.

ANALISA TORRES, District Judge:

        Plaintiff, Thomas M. Moran, brings this action against Defendants, MTA Metro-North

Railroad Company ("Metro-North") and Police Officers Nicholas Strype, Douglas Cohen, Luigi

Seidita, Jason Nandoo, Joseph Teracciano, and Richard Doe (collectively, the "MTA Police

Officers," and together with Metro-North, "Defendants"), under the Federal Employer Liability

Act, 45 U.S.C. § 51 *et seq.* ("FELA") and 42 U.S.C. § 1983, alleging violations of his rights

under the First, Fourth, Fifth, and Fourteenth Amendments to the Constitution.  FAC, ECF No.

48.  Defendants move for partial summary judgment on the following claims: (1) Plaintiff's

FELA claim against Metro-North; (2) Plaintiff's § 1983 claim premised on malicious

prosecution against the MTA Police Officers; and (3) Plaintiff's § 1983 claim based on a

violation of his First Amendment rights against the MTA Police Officers.  Def. Mem. at 2, ECF

No. 82.  For the reasons stated below, Defendants' motion for summary judgment as to

Plaintiff's FELA claim and his § 1983 claim based on a violation of his First Amendment rights

is DENIED.  Defendants' motion for summary judgment as to Plaintiff's § 1983 malicious

prosecution claim is GRANTED.

## BACKGROUND

The facts discussed in this opinion are undisputed except where otherwise noted.  The Court has drawn all reasonable inferences in favor of Plaintiff, as the nonmovant.  *See Costello v. City of Burlington*, 632 F.3d 41, 45 (2d Cir. 2011).[1]

Plaintiff commenced his employment with Metro-North in 2000, and was elevated to the position of conductor in 2002.  56.1 Stmt. ¶¶ 1–2, ECF No. 83.  On August 3, 2017, Plaintiff reported for a tour of duty at the New Haven station in Connecticut.  *Id*. ¶ 3.  His final run on that tour was the "1500" train, scheduled to depart from Grand Central Terminal to New Haven at 1:07 a.m. on August 4, 2017.  *Id*. ¶ 4.  The train was scheduled to stop at the Harlem-125th Street station on its way to New Haven, but only for the limited purpose of receiving passengers, due to certain revenue restrictions imposed by the state of Connecticut, which prohibit trains terminating in Connecticut from transporting passengers between New York stops.  *Id*. ¶¶ 5–7.  Thus, passengers boarding the train at Grand Central Terminal could not disembark at the Harlem-125th Street station.  *Id*. ¶ 7.

Before the train departed from Grand Central Terminal, Plaintiff noticed a wheelchair-bound passenger (the "Passenger") on the platform, who informed Plaintiff that he wished to travel to the Harlem-125th Street station.  *Id*. ¶ 8.  Plaintiff told the Passenger that he would not be stopping at that station.  *Id.*  Nonetheless, the Passenger boarded the train.  *Id*. ¶ 11.

The parties dispute, in substantial part, what occurred on the morning of August 4, 2017.  *Id*. ¶ 12.  According to Plaintiff, the Passenger appeared intoxicated.  FAC ¶ 24.  After Plaintiff

---

[1]  The following facts are drawn from the parties' pleadings and submissions, including the first amended complaint, the Rule 56.1 statement of undisputed facts, and Plaintiff's response.  Disputed facts are so noted.  Citations to a paragraph in the Rule 56.1 statement also includes Plaintiff's response.

informed the Passenger that he could not ride the train to 125th Street, the Passenger began

cursing and yelling.  *Id.*; Moran Dep. at 97:11–98:15, ECF No. 80-2.  Plaintiff walked over to the

MTA Police Officers and asked for help.  Moran Dep. at 99:7–9.  Officer Strype testified that he

had previously noted that the Passenger had a valid ticket to ride the train.  Strype Dep. at 23:20–

24:7, ECF No. 80-1.  Plaintiff testified that the MTA Police Officers did not provide assistance.

Moran Dep. at 106:5–15.  Plaintiff walked back to the Passenger, who began cursing and yelling

again.  *Id.* at 107:16–20.  Plaintiff then went to Trainmaster Douglas Martin's office,  *id.* at

107:7–20, 108:17–23, where he found Officer Seidita speaking with Martin,  *id.* at 112:3–9;

Seidita Dep. at 42:14–43:2, ECF No. 80-4.  Seidita wanted to know whether a conductor could

refuse to transport a passenger with a valid ticket.  Seidita Dep. at 49:22–50:14.  Seidita asked

for Plaintiff's name and employee number, even though Seidita testified that he recognized

Plaintiff and had seen Plaintiff on every tour Seidita had worked.  Moran Dep. at 113:10–13;

Seidita Dep. at 14:17–15:24.  Plaintiff refused to give Seidita the information and called him

"useless."  Moran Dep. at 113:10–17.  Upon leaving Martin's office, Plaintiff passed other MTA

officers.  *Id.* at 114:24–115:9.  Plaintiff stated that he called them "useless."  *Id.* at 115:3–9.

One of them told him, "just do your job," and Plaintiff responded, "Why don't you just do your

job?"  *Id.* at 130:9–11.  The parties dispute whether Plaintiff used threatening or abusive

language during his interactions with the MTA Police Officers.  Martin Dep. at 16:5–18; Seidita

Dep. at 39:15–40:5.

As Plaintiff began walking back to the train, the officers followed him.  Moran Dep. at

131:17–20; Pl. Ex. 1C at 5:19–6:55.  Officer Cohen grabbed Plaintiff by the arm and threw him

down.  Moran Dep. at 132:19–24, 133:12–16.  Plaintiff's face hit the ground first, and then his

whole body landed.  *Id.* at 135:2–8.  Cohen, with the assistance of other officers, placed Plaintiff

in handcuffs.  Cohen Dep. at 21:10–18, ECF No. 80-6; Pl. Ex. 1C at 5:25–5:55.  After the arrest,

Plaintiff was escorted by several officers to a police station at Grand Central Terminal.  Moran

Dep. at 135:13–136:8.  Plaintiff was then transported to Bellevue Hospital for medical attention

where he was given pain medication, received an MRI, and was released back into the custody of

the MTA police.  *Id.* at 138:17–139:3, 141:19–142:22.  Back at the Grand Central police station,

he was fingerprinted, photographed, read his *Miranda* rights, and then taken to Manhattan

Central Booking.  *Id.* at 144:7–22, 146:10–20.  Plaintiff remained there in a cell until the night of

August 4, when he was arraigned and released on his own recognizance.  *Id.* at 147:24–148:4,

150:17–19.  The charges against Plaintiff were dismissed on February 5, 2018, on motion of the

district attorney.  ECF No. 80-10.

## DISCUSSION

### I.    Summary Judgment Standard of Review

Summary judgment is appropriate when the record shows that there is no genuine dispute

as to any material fact and that the moving party is entitled to judgment as a matter of law.  Fed.

R. Civ. P. 56(a); *Anderson v. Liberty Lobby, Inc*., 477 U.S. 242, 247–48 (1986); *Celotex Corp. v.

Catrett*, 477 U.S. 317, 322–26 (1986).  A genuine dispute exists "if the evidence is such that a

reasonable jury could return a verdict for the nonmoving party."  *Anderson*, 477 U.S. at 248.

The moving party initially bears the burden of informing the Court of the absence of a

genuine dispute of material fact by citing particular evidence in the record.  Fed. R. Civ. P.

56(c)(1); *Celotex*, 477 U.S. at 323–24; *Koch v. Town of Brattleboro*, 287 F.3d 162, 165 (2d Cir.

2002).  If the nonmoving party has the ultimate burden of proof on specific issues at trial, the

movant may also satisfy its own summary judgment burden by demonstrating that the adverse

party cannot produce admissible evidence to support an issue of fact.  *Celotex*, 477 U.S. at

322–23; *PepsiCo, Inc. v. Coca-Cola Co.*, 315 F.3d 101, 105 (2d Cir. 2002) (per curiam).  If the

moving party meets its initial burden, the burden then shifts to the opposing party to establish a

genuine dispute of material fact.  *Beard v. Banks*, 548 U.S. 521, 529 (2006); *PepsiCo*, 315 F.3d

at 105.  "Although a party opposing summary judgment need not prove its evidence in a form

admissible at trial or under the evidentiary standard which will be required, it must

show facts sufficient to enable a reasonable mind to conclude that a material dispute

of fact exists."  *Healy v. Chelsea Res. Ltd.*, 736 F. Supp. 488, 491–92 (S.D.N.Y. 1990).  In

deciding the motion, the Court views the record in the light most favorable to the nonmoving

party.  *Koch*, 287 F.3d at 165.

II.     FELA Claims

      Plaintiff asserts claims against Metro-North under FELA.  Plaintiff alleges that the

negligent or intentional acts of Metro-North's agents, servants, employees, co-employees,

borrowed servants, and/or fellow servants caused his injuries.  FAC ¶ 37–39.  Under FELA,

> [e]very common carrier by railroad . . . shall be liable in damages to any person
> suffering injury while he [or she] is employed by such carrier . . . for such injury
> or death resulting in whole or in part from the negligence of any of the officers,
> agents, or employees of such carrier, or by reason of any defect or insufficiency,
> due to its negligence, in its cars, engines, appliances, machinery, track, roadbed,
> works, boats, wharves, or other equipment.

45 U.S.C § 51.  Liability under FELA is found "if [the railroad's] negligence played a part—no

matter how small—in bringing about the injury."  *CSX Transp., Inc. v. McBride*, 564 U.S. 685,

705 (2011) (alteration in original).

      "In FELA actions, the plaintiff must prove the traditional common law elements

of negligence: duty, breach, foreseeability, and causation."  *Tufariello v. Long Island R.R. Co.*,

458 F.3d 80, 87 (2d Cir. 2006).  "Courts apply a more relaxed standard of . . . negligence

to FELA . . . claims than to those arising under common law," *Coale v. Metro-N. Commuter R.R.*

*Co.*, 621 F. App'x 13, 14 (2d Cir. 2015), because "the theory of the FELA is that where the employer's conduct falls short of the high standard required of him by [the] Act, and his fault, in whole or in part, causes injury, liability ensues," *Kernan v. Am. Dredging Co.*, 355 U.S. 426, 438–39 (1958).  Thus, in FELA cases, "the ordinary summary judgment standard is considerably more plaintiff-friendly, and is liberally construed in light of the strong federal policy in favor of letting juries decide cases arising under FELA."  *Scarpa v. Providence & Worcester R.R.*, *Inc*., No. 17 Civ. 2107, 2020 WL 4449788, at *4 (D. Conn. Aug. 3, 2020) (internal quotation marks and citations omitted).  A plaintiff may impute liability to an employer under FELA by proving his case under a theory either of direct negligence or respondeat superior.  *Murphy v. Metro. Transp. Auth*., 548 F. Supp. 2d 29, 40 (S.D.N.Y. 2008).

With respect to the MTA Police Officers, Defendants contend that Plaintiff cannot establish Metro-North's liability under either theory.  Def. Mem. at 9–17.  Similarly, Defendants argue that Plaintiff has not provided sufficient evidence to proceed under a theory of direct negligence with respect to Martin.  *Id.* at 11–14.  The Court agrees that Plaintiff has not adduced sufficient evidence to create a triable issue of fact under a theory of direct negligence with respect to the MTA Police Officers.  However, he has raised a triable issue of fact under the theory of respondeat superior with respect to the MTA Police Officers, and under a theory of direct negligence with respect to Martin.

### A.  Direct Negligence

First, Defendants argue that Plaintiff cannot prevail under a theory of direct negligence because Metro-North could not have anticipated the alleged misconduct of the MTA Police Officers.  Def. Mem. at 9–14.  Under a direct negligence theory, an employer may be liable under FELA if the plaintiff can show that the employer was negligent in "hiring, supervising, or

failing to fire [an] employee." *Stoia v. Long Island R. Co.*, No. 13 Civ. 2060, 2015 WL 5098795, at *5 (S.D.N.Y. Aug. 31, 2015). Plaintiff must show that Metro-North "knew or should have known prior to the assault of propensities of the assailant[s] to commit such assaults." *Harrison v. Missouri Pac. R.R.*, 372 U.S. 248, 249 (1963). Thus, Plaintiff bears the burden of showing that the MTA Police Officers had a propensity for the "type of behavior that caused plaintiff's harm," and that "Metro-North knew of this propensity." *Wahlstrom v. Metro-N. Commuter R.R. Co.*, 89 F. Supp. 2d 506, 515 (S.D.N.Y. 2000) (internal quotation marks and citation omitted).

Plaintiff alleges that there were "bad relations" between the conductors and the MTA police force. FAC ¶ 30. Plaintiff stated that there were occasions when he called MTA officers and they were unhelpful. Moran Dep. at 52:15–16. He also testified that a few months before the August 4 incident, he asked MTA officers to assist him with violent passengers, *id*. at 55:6–57:3, and the MTA officers were verbally abusive toward Plaintiff, *id*. at 58:2–6. He reported the incident, but could not remember the names of the officers. *Id*. at 58:19–59:6. Nor could Plaintiff recall whether any of those officers also participated in the August 4 incident. *Id*. Additionally, he could not remember other instances where he was dissatisfied with the MTA police force. *Id*. at 59:15–20. Thus, based on this record, there is insufficient evidence to create an issue of fact as to whether the MTA Police Officers had a propensity for misconduct, and that Metro-North was aware of such propensity.

Plaintiff appears to allege that Martin failed to provide him with a safe workplace under FELA, rather than that Martin had a propensity for misconduct. FAC ¶ 37. Under FELA, an employer can be liable for failure to provide a safe workplace "when it knows or should know of a potential hazard in the workplace, yet fails to exercise reasonable care to inform and protect its

employees." *Gallose v. Long Island R.R. Co.*, 878 F.2d 80, 84–85 (2d Cir. 1989).  Reasonable

care is determined in light of whether or not a particular danger was foreseeable.  *Gallick v. Balt.*

*& Ohio R.R. Co.*, 372 U.S. 108, 117–18 (1963).  This is a fact issue, and, "as with all factual

issues under the FELA, the right of the jury to pass on this issue must be liberally construed."

*Gallose*, 878 F.2d at 85.

Defendant has not established that there are no disputes as to any material facts

concerning liability with respect to Martin.  Plaintiff alleges, among other things, that Martin's

failure to take steps to resolve the disagreement between Plaintiff and the MTA Police Officers,

to adequately communicate Metro-North's policies and procedures concerning the conductor's

authority to deny a passenger a ride, and to go onto the train to determine whether the Passenger

should have been removed, caused Plaintiff's injuries.  FAC ¶ 37.  Martin stated that he was

responsible for "[o]verseeing operations; making sure trains are where they are supposed to be;

making sure there [are] crew members for the trains; ensuring the safety of the crews, [and] the

passengers."  Martin Dep. at 5:16–22.  He testified that he was "the authority for Metro-North at

that time."  *Id*. at 6:3–5.  Martin said that it was "not an uncommon occurrence at that time of

night" to have a passenger that was "abusive, intoxicated[,] or unruly."  *Id*. at 21:2–8.  Martin

also testified that he would have accompanied Plaintiff to observe the Passenger had Martin not

stayed in his office retrieving Plaintiff's information for Seidita.  *Id*. at 19:20–20:9.  Based on

these facts, a reasonable juror could conclude that Martin, acting on behalf of Metro-North, was

aware of a potential danger to Plaintiff and failed to exercise reasonable care to protect him.

Thus, there is a genuine dispute about whether Metro-North could have "played any part, even

the slightest, in producing the injury."  *Burns v. Penn Cent. Co.*, 519 F.2d 512, 514 (2d Cir.

1975) (quoting *Rogers v. Mo. Pac. R.R.*, 352 U.S. 500, 506 (1957)).  Accordingly, Plaintiff has

adduced sufficient evidence to proceed under a theory of direct negligence against Metro-North.

B.   Respondeat Superior

Under the doctrine of respondeat superior, a "master will be held responsible for the torts of his servant, if they are committed in the course of the employment." *Murphy*, 548 F. Supp. 2d at 40.  Liability can attach if plaintiff can establish that his injuries resulted from "the negligence of any of the officers, agent, or employees." *Id*. at 37.  "[N]o liability attaches when an employee acts entirely upon his own impulse, for his own amusement, and for no purpose of or benefit to the defendant employer." *Id.* (internal quotation marks and citation omitted). "[W]hether an employee is acting within the scope of employment is a question 'to be resolved by the jury from all the surrounding circumstances.'" *Id*. (quoting *Goldwater v. Metro–N. Commuter R.R.*, 101 F.3d 296, 298 (2d Cir. 1996)).  This question should only be taken from a jury when it is clear that "reasonable men could not reach differing conclusions." *Id*. (quoting *Baker v. Tex. & Pac. Ry. Co*., 359 U.S. 227, 228 (1959)).  Defendants argue that, with respect to the MTA Police Officers, Plaintiff has not adduced evidence of a master-servant relationship with Metro-North.  Def. Mem. at 14–17.  The Court disagrees.

A juror could conclude that the MTA Police Officers were acting as agents of Metro-North and "in furtherance of the employer's business." *Kelly v. Metro-N. Commuter R.R.*, 37 F. Supp. 2d 233, 239 (S.D.N.Y. 1999).  The parties agree that the involvement of the MTA Police Officers arose under disputed circumstances.  56.1 Stmt. ¶ 12.  Defendants state that the MTA Police Officers believed that the Passenger had a valid ticket, and that Plaintiff was failing to provide a ride to a passenger in a wheelchair.  Def. Mem. at 4–5.  Seidita testified that as the events were unfolding, he attempted to reason with Plaintiff by asking, "how is this going to look tomorrow morning in the newspaper [that] Metro-North refus[ed] services to a [disabled]

person." Seidita Dep. at 39:15–23.  Moreover, Strype stated that Plaintiff's arrest was predicated

on his causing public alarm on the train platform.  Strype Dep. at 46:11–17.  Cohen said that he

wanted Plaintiff's employee identification card so that he could speak to Plaintiff's supervisor to

sort out the issue with the Passenger.  Cohen Dep. at 16:21–17:10.  He also testified that

handcuffing Plaintiff was necessary for the safety of the officers and potentially the commuters.

*Id*. at 24:2–11.  Thus, in light of these facts, and the disputed circumstances under which

Plaintiff's injuries occurred, a reasonable jury could find that the MTA Police Officers were

carrying out their duties as agents of Metro-North, within the scope of their employment, and in

furtherance of Metro-North's business objectives.  *See Lumbermens Mut. Cas. Co. v. Franey*

*Muha Alliant Ins. Servs*., 338 F. Supp. 2d 292, 301 (S.D.N.Y. 2005) ("Unless the facts are

insufficient to support a finding of agency or there is no dispute as to the historical facts, the

question of agency should be submitted to the jury.").  This is particularly so because of the

"relaxed standard for surviving summary judgment."  *Murphy*, 548 F. Supp. 2d at 42.

Accordingly, Defendants' motion for summary judgment with respect to Plaintiff's

FELA claim is DENIED.

III.   Malicious Prosecution

The elements of a federal cause of action for malicious prosecution are: "(1) the initiation

of a proceeding, (2) its termination favorably to plaintiff, (3) lack of probable cause, and (4)

malice."  *Savino v. City of New York*, 331 F.3d 63, 72 (2d Cir. 2003) (citation and internal

quotation marks omitted).  Defendants principally argue that Plaintiff's claim against the MTA

Police Officers must fail because he has not adduced evidence showing that there was a

favorable termination of the proceedings.  Def. Mem. at 18.  The Court agrees.

A. Initiation

10

The Second Circuit has held that "[i]nitiation in [the context of malicious prosecution] is a term of art," involving more than merely reporting a crime and giving testimony; "it must be shown that defendant played an active role in the prosecution, such as giving advice and encouragement or importuning the authorities to act." *Rohman v. N.Y.C. Transit Auth. (NYCTA)*, 215 F.3d 208, 217 (2d Cir. 2000) (quotation marks and citation omitted). "[T]here is a presumption that a prosecutor exercises independent judgment in deciding whether to initiate and continue a criminal proceeding." *Espada v. Schneider*, 522 F. Supp. 2d 544, 553 (S.D.N.Y. 2007) (internal quotation marks and citation omitted). In the case of police officers, however, that presumption is overcome "where the defendant-officer brought formal charges and had the person arraigned, filled out complaining and corroborating affidavits, swore to and signed a felony complaint, or created false information and forwarded it to prosecutors." *Cambisaca v. Ruhe*, No. 17 Civ. 87, 2019 WL 2866072, at *6 (S.D.N.Y. July 3, 2019) (quoting *Alcantara v. City of New York*, 646 F. Supp. 2d 449, 457–58 (S.D.N.Y. 2009)); *Cameron v. City of New York*, 598 F.3d 50, 63 (2d Cir. 2010) ("[P]olice officers can 'initiate' prosecution by filing charges or other accusatory instruments.").

Defendants agree that Plaintiff has presented sufficient evidence as to Strype because he appears to have initiated the criminal proceedings against Plaintiff. Def. Mem. at 18. He communicated with the assistant district attorney about the charges and executed the felony complaint. *Id.* As to the remaining MTA Police Officers, however, the parties agree that they did not initiate or prosecute the charges. *Id.* at 18–19; Pl. Opp'n at 17, ECF No. 77. Because there is no evidence that the remaining MTA Police Officers played a role in the initiation of criminal proceedings against Plaintiff, summary judgment on this claim is appropriate as to those officers.

B. Favorable Termination

Defendants argue that Plaintiff cannot demonstrate favorable termination of the criminal proceedings.  Def. Mem. at 18.  For a federal malicious prosecution claim to have terminated favorably to the plaintiff, the plaintiff must show that "the underlying criminal proceeding ended in a manner that affirmatively indicates his innocence."  *Lanning v. City of Glens Falls*, 908 F.3d 19, 22 (2d Cir. 2018).  It cannot "le[ave] the question of guilt or innocence unanswered."  *Id.* at 28.  However, "neither an acquittal nor a finding of actual innocence by clear and convincing evidence is necessary."  *Hincapie v. City of New York*, 434 F. Supp. 3d 61, 71–72 (S.D.N.Y. 2020).  Rather, "termination must be measured in objective terms by examining the totality of the circumstances."  *Id.* (internal quotation marks and citation omitted).

Here, Plaintiff's criminal proceeding was terminated on February 5, 2018, when it was dismissed on motion of the district attorney.  56.1 Stmt. ¶ 14; ECF No. 80-10.  The dismissal was sealed "pursuant to Section 160.50 of the CPL."  ECF No. 80-10.  The certificate of disposition does not provide any further information about the reasons for its dismissal.  *Id.*  Plaintiff testified that the charges were dismissed because he "was an innocent person."  Moran Dep. at 199:24–200:2.  Plaintiff, however, could not recall what the judge said or whether the judge cited any section of the criminal procedure or penal law in dismissing the charges.  *Id.* at 200:6–22.

Though a dismissal does not foreclose a finding of favorable termination under federal law, it does not *per se* demonstrate favorable termination.  For instance, the Second Circuit has differentiated between a dismissal where the prosecutor determined that he could not prove the charges beyond a reasonable doubt, which is sufficient for a malicious prosecution claim, and a dismissal where the prosecutor dismissed "in the interest of judicial economy," which is not.  *Olaizola v. Foley*, 797 F. App'x 623, 625 (2d Cir. 2020).  A plaintiff must, therefore, give a

12

specific reason for the dismissal that affirmatively demonstrates his innocence. *Thompson v. Clark*, 794 F. App'x 140, 141–42 (2d Cir. 2020) (holding a termination was insufficient where neither the court nor the prosecutor offered reasons for the dismissal and the district court had found "substantial" evidence the case had been dismissed for reasons other than the merits); *see also Foy v. City of New York*, No. 7 Civ. 406, 2019 WL 3717317, at *7 (E.D.N.Y. Aug. 7, 2019) (finding insufficient a termination where the plaintiff did not know why her charges were dismissed).

Section 160.50 mandates that a criminal case be terminated and sealed when it is dismissed for certain enumerated reasons. N.Y. Crim. Proc. Law § 160.50. Federal courts have rejected the contention that sealing under § 160.50 affirmatively establishes a plaintiff's innocence. *See Falls v. Rivera*, No. 19 Civ. 3525, 2019 WL 5260720, at *2 (S.D.N.Y. Oct. 15, 2019). Moreover, § 160.50 allows for termination and sealing based on dismissals on grounds that do not affirmatively indicate innocence, such as jurisdiction. N.Y. Crim. Proc. Law § 160.50(3)(b). Without other evidence explaining why Plaintiff's case was dismissed, Plaintiff's federal malicious prosecution cause of action must fail. *Hincapie*, 434 F. Supp. 3d at 73.

Accordingly, Defendants' motion for summary judgment is GRANTED as to Plaintiff's federal malicious prosecution claim.

IV.   <u>First Amendment Retaliation</u>

Plaintiff alleges that the MTA Police Officers unlawfully retaliated against him for exercising his First Amendment rights. FAC ¶ 84. To succeed on a First Amendment retaliation claim, a plaintiff must show that: "(1) he has a right protected by the First Amendment; (2) the defendant's actions were motivated or substantially caused by his exercise of that right; and (3) the defendant's actions caused him some injury." *Dorsett v. City of Nassau*, 732 F.3d 157, 160

(2d Cir. 2013). Defendants contend that summary judgment is warranted because Plaintiff has failed to establish sufficient evidence to meet the first and second prongs of this claim. Def. Mem. at 19; Def. Reply at 8–9.[2] The Court disagrees.

Defendants argue that Plaintiff fails to identify the speech entitled to First Amendment protection. Def. Mem. at 19. Plaintiff contends that his statements that the MTA Police Officers were "useless and not doing their job" constitute protected speech. Pl. Opp'n at 17–18. "The First Amendment protects a significant amount of verbal criticism and challenge directed at police officers." *City of Houston v. Hill,* 482 U.S. 451, 461 (1987). Such speech "will be protected unless it is 'likely to produce a clear and present danger of a serious substantive evil that rises far above public inconvenience, annoyance or unrest.'" *Kerman v. City of New York*, 261 F.3d 229, 242 (2d Cir. 2001) (quoting *Posr v. Court Officer Shield No. 207*, 180 F.3d 409, 415 (2d Cir. 1999)). Thus, the Court agrees with Plaintiff that a reasonable jury could find that Plaintiff's comments were protected by the First Amendment.

The Court also finds that Defendants have not shown that there is no genuine of dispute of material fact concerning Defendants' motives. To satisfy this burden, a plaintiff must rely on more than generalized allegations of malice. *See Kerman*, 261 F.3d at 242. Specific proof of improper motivation is required in order for a plaintiff to survive summary judgment on a First Amendment retaliation claim. *Curley v. Village of Suffern*, 268 F.3d 65, 73 (2d Cir. 2001) (citing *Blue v. Koren*, 72 F.3d 1075, 1082–83 (2d Cir. 1995)). "[W]here . . . circumstantial

---

[2] In their opening motion papers, Defendants also contend that Plaintiff has not alleged any "chilling of his First Amendment right to free speech" as a result of the August 4 incident, and thus Plaintiff fails to meet the third prong of his retaliation cause of action. Def. Mem. at 19. On reply, however, Defendants concede that "[a] First Amendment retaliation claim may be pursued if the plaintiff suffered some other concrete harm." Def. Reply at 8. Plaintiff alleges that he has suffered concrete harms as a result of the incident, including "emotional distress" and "mental anguish." FAC ¶ 95. Such "emotional damages can constitute sufficient injury to support a First Amendment retaliation claim." *Doe v. City of New York*, No. 18 Civ. 670, 2020 WL 108265, at *10 (E.D.N.Y. Jan. 9, 2020).

evidence of a retaliatory motive is sufficiently compelling, direct evidence is not invariably required." *Bennet v. Goord*, 343 F.3d 133, 138–39 (2d Cir. 2003).  For example, a plaintiff may demonstrate improper motive through "expressions by the officials involved regarding their state of mind, circumstances suggesting in a substantial fashion that the plaintiff has been singled out, or the highly unusual nature of the actions taken." *Blue*, 72 F.3d at 1084.

Plaintiff has raised a genuine issue of material fact as to whether the MTA Police Officers acted with an improper motive.  Plaintiff contends that the disputed facts concerning how the events unfolded, the unjustifiable nature of his arrest, and Defendants' statements that Plaintiff should not be "talking to [the officers] that way" after he called them "useless" tend to show an improper or retaliatory motive.  Pl. Opp'n at 18.  Moreover, Plaintiff posits that the video of his arrest demonstrates that there was no crowd, and thus no clear and present danger to the public, that would justify his arrest.  *Id*.  A reasonable juror could find that these facts amount to "sufficiently compelling" circumstantial evidence that the MTA Police Officers acted with a retaliatory or improper motive when they arrested him.  *Bennet*, 343 F.3d at 138–39.

Accordingly, Defendants' motion for summary judgment on Plaintiff's First Amendment claim is DENIED.

**CONCLUSION**

For the foregoing reasons, Defendants' motion for summary judgment is DENIED in part and GRANTED in part.  Defendants' motion for summary judgment on Plaintiff's FELA and § 1983 First Amendment retaliation claims is DENIED, and their motion for summary judgment on Plaintiff's § 1983 malicious prosecution claim is GRANTED.

The Clerk of Court is directed to terminate the motion at ECF No. 81.

SO ORDERED.

Dated:  March 31, 2021
         New York, New York

_____
ANALISA TORRES
United States District Judge

16