UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------------------x
THOMAS M. MORAN,

                          Plaintiff,

            - against -                                                    19-cv-3079 (AT)(KHP)

MTA METRO-NORTH RAILROAD COMPANY,                      **JOINT PRE-TRIAL**
PO NICHOLAS STRYPE (individual capacity),              **ORDER**
PO DOUGLAS COHEN (individual capacity), PO LUIGI
SEIDITA (individual capacity), PO JASON NANDOO
(individual capacity), PO JOSEPH TERACCIANO
(individual capacity), and PO RICHARD DOE (Full names
and number of whom are unknown at present, and other
unidentified members of the MTA Police Department in
their individual capacities),

                          Defendants.
------------------------------------------------------------------------x

**PROPOSED JOINT PRE-TRIAL ORDER**

i.      THOMAS M. MORAN, CIVIL ACTION   VS MTA METRO-NORTH RAILROAD

COMPANY, PO NICHOLAS STRYPE (individual capacity), PO DOUGLAS COHEN

(individual capacity), PO LUIGI SEIDITA (individual capacity), PO JASON NANDOO

(individual capacity), PO JOSEPH TERACCIANO (individual capacity), and PO RICHARD

DOE (Full names and number of whom are unknown at present, and other unidentified members

of the MTA Police Department in their individual capacities), Defendants.


ii.     George J. Cahill, Jr. and Scott E. Perry, CAHILL & PERRY, P.C. 43 Trumbull Street

New Haven, Connecticut 06510 Telephone: (203) 777-1000, Cellular: (203) 444-4369 Fax: (203)

865-5904, cahill@trainlaw.com

        Steve S. Efron and Renée L. Cyr; Office of Steve S. Efron; 237 West 25th Street, Suite

1502, New York, NY 10001; office phone: (212) 867-1067, office fax: (212) 682-5958, Efron

cell: (646) 413-0388, Cyr cell (848) 248-8141.

iii.     The parties have not consented to trial by a magistrate judge.

iv.     The jurisdiction of this Court is predicated upon: the Federal Employers' Liability Act (45 U.S.C. § 51, et seq.) (hereinafter the "FELA"); the Constitution of the United States and the Civil Rights Act, Title 42, of the United States Code, § 1983; federal question jurisdiction per 28 U.S.C. § § 1331, 1343 (3) & (4) and supplemental jurisdiction under provisions of 28 U.S.C. § 1367.

v.     <u>Plaintiff's Claims</u>

The Plaintiff claims that the Defendant MTA Metro-North Trainmaster Martin was negligent under FELA for failing to resolve the disagreement between the Plaintiff and the Defendant officers; failing to adequately communicate MTA Metro-North policies and procedures concerning the conductor's authority to deny a passenger a ride; failing to go onto the train to determine whether the passenger should have been removed; and responsible for the negligence of its agents, the MTA Police Officers, under the doctrine of respondeat superior. The MTA Police Officers arrest of the Plaintiff violated his rights under the First, Fourth, Fifth, and Fourteenth Amendments to the Constitution. The Plaintiff claims that the MTA Police Officers retaliated against him for verbal criticism and challenge directed at the officers; arrested him without any probable cause and with unreasonable force; and that the MTA Police Officers failed to intervene.

<u>Defenses that Remain to be Tried</u>

In response to plaintiff's claims against the MTA police officers for an alleged deprivation of his Fourth Amendment rights, actionable under 42 U.S.C. § 1983, the arresting officers contend they had probable cause to arrest plaintiff on a charge of disorderly conduct (N.Y. Penal Law 240.20[1], [3]; assault in the second degree (Penal Law 120.05); and resisting

arrest (Penal Law 205.30).  The arresting officers further contend that even if probable cause to arrest plaintiff was lacking, they at least had "arguable" probable cause to arrest, entitling them to qualified immunity from suit.

The MTA police officers deny that excessive force was used to effectuate the arrest, and Officer Luigi Seidita (singled out by plaintiff as an officer who had an opportunity to intervene to prevent the allegedly false arrest and use of excessive force but failed to do so) was not present at the time of the arrest.

Regarding plaintiff's claim of retaliation for exercising his First Amendment right to speech, the MTA officers contend that plaintiff was not engaged in protected speech and that the motivation for the arrest was not retaliatory in nature but predicated on plaintiff's violation of the Penal Law.  Probable cause to arrest is, as a matter of law, a complete defense to an allegation of First Amendment retaliation.

Defendant Metro-North disputes that the MTA police officers were acting as agents for Metro-North such that any unlawful conduct on the part of the officers can be imputed to Metro-North on a theory of respondeat superior.  Metro-North further contends that there was no negligence on its part that contributed to plaintiff's injuries.  But assuming plaintiff can show that Metro-North was negligent, the evidence will demonstrate that plaintiff's own fault contributed in large measure to his injuries.


vi.  This case is to be tried with a jury and is expected to require two weeks of evidence.


vii.  There are currently no stipulations or agreed statements of fact or law to which all parties consent.


viii.  List of Trial Witnesses

Plaintiff's Witness List

1.     The Plaintiff will testify concerning the circumstances surrounding his arrest, injuries, and the psychological effect on his life.

2.     The Plaintiff's wife, Norma Moran, will testify concerning the impact the arrest has had on his life.

3.     MTA Police Sergeant Jon Piscitelli may testify concerning the surveillance videos and his investigation of plaintiff's arrest.

4.     MTA Police Lieutenant Pontorno may testify concerning the surveillance videos and the Internal Affairs Bureau investigation.

5.     MTA Metro-North Locomotive Engineer, Richard Macri, will testify concerning the circumstances surround the plaintiff's arrest.

6.     Dr. Kenneth Kramer, plaintiff's treating orthopedist, will testify by video (de bene esse deposition)

7.     Dr. Marina Zatman, plaintiff's treating psychiatrist, will testify in person or by video deposition if she is unavailable.

8.     Dr. Michael Bellotti, plaintiff's treating therapist, will testify in person or by video deposition if he is unavailable.

9.     Jeffrey Joy, MBA,M.Ed,CRC will testify concerning his expert vocational report.

10.     Stephen J. Shapiro, Ph.D  will testify concerning his expert report concerning the plaintiff's lost earnings capacity.

11.     MTA Metro-North Chief Transportation Officer Kevin O'Connor will testify concerning the circumstances and events surrounding the plaintiff's August 4, 2017 arrest.

12.     Union Representatives Ralph Sanzori may testify regarding plaintiff's benefits, work rules, safety rules, railroad practices, and railroad procedures and the circumstances surrounding the plaintiff's arrest.

13.     Union Representatives Ed Valenti may testify regarding plaintiff's benefits, wages,

4

work rules, safety rules, railroad practices, and railroad procedures.

14.     MTA Metro-North Manager Steve DePalma will testify concerning the rules and procedure pertaining to the facts, circumstance and events surrounding the Plaintiff's August 4, 2017 arrest.

15.     MTA Police Officer Michael Crana will testify concerning the individual in the wheelchair and the facts, circumstances surrounding the plaintiff's arrest.

16.     Metro-North General Counsel Susan Sarch will testify concerning the contractual agreements between the MTA and the defendant MTA Metro-North Railroad.

[Defendants object, see defendants' In Limine motion]


Defendants' Witness List

1.     MTA Police Officer Douglas Cohen will offer testimony concerning his experience as a police officer, the role and function of MTA officers in patrolling Metro-North facilities, the facts and circumstances surrounding the arrest and detention of plaintiff on August 4, 2017, and the grounds for the charges asserted, or which could have been asserted, against plaintiff.

2.     MTA Police Officer Luigi Seidita will offer testimony concerning his experience as a police officer, the role and function of MTA officers in patrolling Metro-North facilities, the facts and circumstances surrounding the arrest and detention of plaintiff on August 4, 2017, and the grounds for the charges asserted, or which could have been asserted, against plaintiff.

3.     MTA Police Officer Nicholas Strype will offer testimony concerning his experience as a police officer, the role and function of MTA officers in patrolling Metro-North facilities, the facts and circumstances surrounding the arrest and detention of plaintiff on August 4, 2017, and the grounds for the charges asserted, or which could have been asserted, against plaintiff.

4.      MTA Police Officer Jason Nandoo will offer testimony concerning his experience as a police officer, the role and function of MTA officers in patrolling Metro-North facilities, the facts and circumstances surrounding the arrest and detention of plaintiff on August 4, 2017, and the grounds for the charges asserted, or which could have been asserted, against plaintiff.

5.      MTA Police Officer Joseph Terracciano will offer testimony concerning his experience as a police officer, the role and function of MTA officers in patrolling Metro-North facilities, the facts and circumstances surrounding the arrest and detention of plaintiff on August 4, 2017, and the grounds for the charges asserted, or which could have been asserted, against plaintiff.

6.      Metro-North Trainmaster Douglas Martin will offer testimony concerning his knowledge of the facts and circumstances surrounding the arrest of plaintiff, the procedures and practices related to the transportation of disabled passengers, exceptions to the "receive only" rule applicable to the Harlem 125th Street station, and the relationship between Metro-North personnel and MTA police officers.

7.      Metro-North Station Master Brian Hicks will offer testimony concerning his knowledge of the facts and circumstances surrounding the arrest of plaintiff, the procedures and practices related to the transportation of disabled passengers, and the relationship between Metro-North personnel and MTA police officers.

8.      MTA Sgt. Jon Piscitelli will offer testimony concerning his knowledge of the facts and circumstances surrounding the arrest of plaintiff, his role in investigating the incident, the procedures and practices followed by MTA officers in policing Grand Central Terminal, and the relationship between Metro-North personnel and MTA police officers.

9.      EMT Swiontak will offer testimony concerning treatment he rendered to Officer Cohen on August 4, 2017, for an injury to Officer Cohen's right shoulder.

10.    Metro-North Assistant Station Master John Weyhausen will offer testimony concerning his knowledge of the facts and circumstances surrounding plaintiff's arrest.

11.    Metro-North Engineer Richard Macri will offer testimony concerning his knowledge of the facts and circumstances surrounding plaintiff's arrest.

12.    Antonio Francisco Athaide, the wheel-chair using customer, will offer testimony concerning his interactions with MTA police and plaintiff on August 4, 2017.

13.    MTA Police Officer Michael Crana will offer testimony concerning his knowledge of the facts and circumstances surrounding plaintiff's arrest.

14.    MTA Lt. Pontorno will offer testimony concerning the IAB investigation into the arrest of plaintiff on August 4, 2017.

15.    Josefina Tranfa-Abboud, an economist, will offer expert testimony, based on her review and analysis of pertinent documents and data, as to plaintiff's past and future economic loss under several potential scenarios.

16.    Lisa Rocchio, a forensic psychologist, will offer expert testimony, based on her clinical evaluation and diagnostic testing of plaintiff, as to plaintiff's mental condition, its relation to the events of August 4, 2017, the severity of the condition, its likely course over time, and the limitations it has imposed on plaintiff's activities.

17.    Steve Weiss, Financial Liaison MTA Metro-North R.R., will offer testimony concerning the impact of the ongoing Covid-19 pandemic on ridership and the reduced availability of overtime work, as well as the implementation of planned operational changes designed to reduce overtime expenditures.
[Plaintiff objects to untimely disclosure after discovery. FRCP 26(a)(e); FRCP 37(c)(1)]

18.    Michael Bellotti, plaintiff's treating psychologist, will offer testimony concerning

his treatment of plaintiff, the progress made by plaintiff in therapy, the status of

plaintiff's condition and his capacity to be gainfully employed.

ix.  Designation of Deposition Testimony

Plaintiff's Designations

Plaintiff designates the following deposition testimony to be offered:

1.     Seidita Deposition at 5:8-11, 12:6-13:5, 14:17–17:4, 27:24-28:23, 29:5-30:2,
        39:10–40:9, 41:11-19, 42:14–44:22

- He removes 80 to 100 passengers per year 5:8-11, 12:6-13.5.

- He has had prior dealing with the plaintiff and doesn't think he has a friendly

relationship with any of the police officers 14:17–17:4.

 - He thinks that the RR should have brought discipline charges against the plaintiff for

using foul language to the police and to Deputy Station Master Hicks 27:24-28:23.

- During his first encounter with the plaintiff in the Main Concourse, Strype, Nadoo,

Terracciano, Cohen, and the Station Master were in the same area 29:5-30:2.

- During the first encounter with the plaintiff in the Main Concourse the Deputy Station

Master Hicks was there when he had his conversation with the plaintiff 39:10–40:9.

- He went to Deputy Station Master Hicks who was there for the entire incident, and they

went to the Trainmaster's office located at Track 25.  41:11-19.

- He describes the plaintiff's foul language and insults directed at him in the

Trainmaster's office located at track 25 with both Trainmaster Martin and Dep. Station Master

Hicks 42:14–44:22.

2.     Strype Deposition at 4:8-9, 46:11-17, 47:8-10

- He indicated that society was a victim because he observed give or take 15 people that

were alarmed 46:11-17.

- He admits that they would know who he is if the plaintiff was wearing a name tag 47:8-

10.

  3.  Cohen Deposition at 4:8-9, 5:11-7:12, 16:14-19:20, 20:4- 14, 20:21-24, 21:19-
    26:3, 47:23-48:12

- Describes his police career with NYPD and MTA PD and working in GCT for 4-5 years. 4:8-9, 5:11-7:12.

- Describes asking the plaintiff for his ID so he could attempt to call the Trainmaster to sort it out and see what Trainmaster wants to do. He was not focused on the commuters and not sure exactly how many people were there. He didn't know that his partner Seidita was in the Trainmaster's office 16:14-19:20.

- Wanted the plaintiff's employee I.D. to give it to his Trainmaster and let the Trainmaster make the next judgment 20:4-14.

- Doesn't honestly recall if he had his handcuffs out when he attempted to place him in handcuffs 20:21-24.

- He didn't call his police supervisor because the plaintiff took a step towards the train, and he was in fear for us and maybe even commuters. He directed the plaintiff to the ground because he would not give him his employee I.D and "he's being placed under arrest I guess." 21:19-26:3.

 - He directed the plaintiff to the ground and plaintiff did not knock him to the ground. He felt shoulder pain an hour or two later 47:23-48:12.

  4.  Martin Deposition 4:8-9, 5:13–6:5, 15:4--20:9, 21:2–8; 24:10-16

- As Trainmaster, he oversees the MTA Metro-North train operations and ensures the safety of the crews and passengers. He was the authority for Metro-North at that time 4:8-9, 5:13–6:5.

- Does not recall the plaintiff using any abusive language or Seidita saying anything about the plaintiff will be out of service tomorrow. The plaintiff did not appear to be intoxicated or on drugs as described by Seidita. Connecticut trains do not transport passenger to 125th Station. If a

passenger is abusive, the conductor has the authority to remove him from the train. He intended to check out the passenger with the plaintiff but was getting information for Seidita. 15:4-20:9.

- It was not an uncommon occurrence to have an abusive, intoxicated or unruly passenger at that time of night. 21:2–8.

- The MTA Metro-North Incident Report indicates that the passenger was unruly and that he was cursing at Conductor Moran. 24:10-16.

- Hicks Deposition 4:7-9, 5:5-19, 7:19-12:5, 12:6- 14:3, 14:24-17:24, 18:2- 20:14, 20:23-25:24, 27:3-11

- He is the Deputy Stationmaster responsible for managing the terminal 4:7-9, 5:5-19.

- He first observed Seidita on the Main|Concourse, but did not see the plaintiff until he was in the Trainmaster's office. He did not witness the conversation between the plaintiff and Seidita on the Main Concourse. Seidita had a question about the trains, and I told him that he needs to speak to the Trainmaster and took Seidita to his office. 7:19-12:5.

- Seidita was talking to Trainmaster Martin when plaintiff came into the office and said he didn't want to ride the person. It went back and forth for a while and the plaintiff turned and went out the door. 12:6- 14:3.

- Hicks confirmed that his statement he gave at 3:00 a.m. to the MTA Police Sergeant Piscetelli after the arrest was a complete and accurate statement. 14:24-17:24.

- Doesn't recall the plaintiff using any abusive or insulting language to Seidita and if he did, he would have taken him out of service if the plaintiff was one of his employees 18:2- 20:14.

- Doesn't recall if Seidita told the plaintiff that he would be out of service tomorrow, but that is something he would have put in his statement if it was said. If the plaintiff used any foul and insulting language to Seidita, he would have put it in his statement.  When asked if plaintiff swore at him on the Main Concourse as alleged by Seidita, Hicks responded that he did not recall seeing the plaintiff on the Main Concourse. 20:23-25:24.

- He was required to make a written statement concerning the incident as a Metro-North

10

manager 27:3-11.

5.      Bellotti Deposition

- Dr. Bellotti's testimony, which was video-taped, concerns his treatment of the plaintiff and his opinion that he is permanently disabled from working on the railroad due to PTSD caused by his arrest.

Defendants' Designations

The following deposition testimony to be offered on defendants' case-in-chief:

Thomas Moran

pg. 32, lines 13-25

pg. 33, lines 5-8

pg. 34, lines 12-17; 20-23

pg. 35, lines 3-7

pg. 36, lines 11-18

pg. 42, line 11 to pg. 43 line 4

pg. 47, lines 7-10; 19 to pg. 48 line 9

pg. 52, line 17 to pg. 53 line 9

pg. 68, line 15 to pg. 70 line 11

pg. 77, line 15 to pg. 79 line 11

pg. 79, line 23 to pg. 80 line 2

pg. 80, line 11 to pg. 81 line 19

pg. 82, line 8 to pg. 83 line 8

pg. 83, line 14 to pg. 84 line 3

pg. 84, lines 13-21; 25 to pg. 85 line 25

pg. 88, line 25 to pg. 90 line 12

pg. 93, line 8 to pg. 94 line 7

pg. 94, line 17 to pg. 95 line 15

pg. 96, line 21 to pg. 97 line 3

pg. 97, line 17 to pg. 98 line 15

pg. 100, lines 6-21

pg. 102, line 13 to pg. 106 line 24

pg. 109, lines 10-19

pg. 110, lines 2-21

pg. 112, line 17 to pg. 114 line 18

pg. 115, lines 10-19

pg. 116, line 16 to pg. 118 line 19

pg. 122, line 16 to pg. 123 line 24

pg. 130, line 5 to pg. 131 line 20

pg. 157, lines 6-18

pg. 165, line 15 to pg. 166 line 13

pg. 185, lines 19-21

pg. 198, line 17 to pg. 199 line 5

Defendants respectfully reserve the right to introduce on its case-in-chief the deposition testimony of a witness who is not available to appear at trial for one or more of the reasons set forth in Fed. R. Civ. P. 32.


Defendants' counter-designations to plaintiff's designations of deposition testimony:

Police Officer Luigi Seidita

pg. 17 lines 5-19

pg. 18 line 21 to pg. 19 line 4

pg. 45 line 7 to pg. 46 line 10

<u>Police Officer Nicholas Strype</u>

      pg. 31 line 10 to pg. 32 line 14

      pg. 34 lines 4 to 9


x.  Exhibit Lists

<u>Plaintiff's Exhibit List</u>

Exhibit 1 - Video Clips in AVI and MP4 format

      (a)      Video Clip GCT-2017 (arrest)

      (b)      Video Clip 17-15347(7) (wheelchair person)

      (c)      Video Clip 17-15347 (bottom of ramp and track 27 platform)

      (d)      Video Clip 17-15347(6) (Main Concourse)

      (e)      Video Clip 17-15347(2) (between the gates and the ramps)

      (f)      Video Clip 17-15347(4) (top of the escalators)

      (g)      Video Clip 17-15347(5) (bottom of the escalators)

Exhibit 2 - Douglas Martin's Deposition Transcript

Exhibit 3 - Nicholas Strype's Deposition Transcript

Exhibit 4 - Thomas Moran's Deposition Transcript

      [Defendants' object pursuant to F.R.C.P. 32 and F.R.E. 801 and 802]

Exhibit 5 - Luigi Seidita's Deposition Transcript

Exhibit 6 - Brian Hicks's Deposition Transcript

Exhibit 7 - Douglas Cohen's Deposition Transcript

Exhibit 8 - Dr. Michael J. Bellotti's Deposition Transcript

      [Defendants' object on the grounds of hearsay and relevance]

Exhibit 9 - Brian Hick's Voluntary Statement

Exhibit 10 - Criminal Court of the City of New York Certificate of Disposition

Exhibit 11 - MTA Metro-North Incident Report (IR-1 & IR-2)

Exhibit 12 - City of New York Felony Criminal Complaint Against Thomas Moran

Exhibit 13 - Dr. Lisa Rocchio's Forensic Psychological Evaluation Summary

Exhibit 14 - CD containing the following Internal Affairs Bureau Interviews:

> - Cohen 3:41-9:02(describes incident); 14:48--15:02(plaintiff did not attempt to strike the officers), 5:51-16:45 (why he decided to arrest);
>
> - Terracciano 3:12-5:46;(describes incident)
>
> - Sedita 2:55-9:06;(describes incident)
>
> - Strype 3:09-7:49 (describes wheelchair person and incident), 9:24-10:36(reviews video of the plaintiff walking to the trainmaster's office), 11:11-12:58(reviews the videos of the plaintiff walking back from the trainmasters' office and the arrest), 13:36-16:07(describes wheelchair person);
>
> - Crana 8:10-11:53 (reviews video and describes what he heard during the arrest);
>
> - Nandoo   10:01-10:20 (doesn't recall Cohen asking for an ID)

Exhibit 15 - Trackage Rights Agreement Between Metro North Commuter Railroad Company, Metropolitan Transportation Authority, Connecticut Department of Transportation and Consolidated Rail Corporation, Effective as of January 1, 1983

> [Defendants object, see defendants' In Limine motion]

Exhibit 16 - MTA Police Incident Report

Exhibit 17 - MTA Sergeant Piscitelli Memorandum to Chief Monaghan

Exhibit 18 - MTA Police Department IAB Investigating Officer's Report

Each party reserves the right to offer into evidence any of the exhibits listed by the opposing party to which it has no objections and any impeachment exhibits or exhibits required by way of rebuttal.  Each party reserves the right to object to any exhibits not listed herein that are offered for impeachment or rebuttal.


Defendants' Exhibit List

A.  MTA Police Department Incident Report 17-15347.

B.  Metro-North Incident Investigation Report (MTA 000021-32).

C.  Prehospital Care Report Summary for Thomas Moran (MTA 000046-48).

D.  CityMD urgent care record for Police Officer Douglas Cohen.

E.  Sgt. Piscitelli Memorandum Re: Custodial Injury (MTA 000733-34).

F.  Felony Complaint executed by Police Officer Nicholas Strype (DANY 000004-5).

G.  New York City PD Omniform System – Arrests (DANY 000008-9).

H.  MTA Police Department IAB Investigating Officer's Report (MTA 000735-50).

I.  Metro-North On-Board Service Manual - Rules and Instructions for Conductors and Assistant Conductors in Passenger Service (MTA 000120-202).

J.  Plaintiff's Responses to Defendant's Third Set of Requests for Documents, dated December 12, 2019.

K.  Plaintiff's Application for Services submitted to Bureau of Rehabilitation Services, dated December 11, 2019.

L.  Plaintiff's Application for Retirement (MTA 000804-11).

    [Plaintiff objects per Fed. R. E. 403  because it is inadmissible collateral source evidence and any relevance is substantially outweighed by danger of unfair prejudice See Eichel v. New York Central RR, 375 U.S. 253 (1963); Sheehy v. Southern Pac. Transp. Co., 631 F.2d 649, 651-52 (9th Cir. 1980);  Page v. St. Louis Southwestern Railway Co., 349 F.2d 820, 821 (9th Cir. 1965)]

M.  Plaintiff's Disclosure of Expert Witnesses and Report of Jeffrey Joy.

N.  Metro-North Security Camera Video Clips:

    1.  Clip 17-15347

    2.  Clip 17-15347(2)

    3.  Clip 17-15347(3)

    4.  Clip 17-15347(4)

     5.  Clip 17-15347(5)

     6.  Clip 17-15347(6)

     7.  Clip 17-15347(7)

     8.  Clip GCT_2017_08_04_01.

O.  Cheshire Physical Therapy records.

P.  Treatment records of Dr. Mark Kasper (Internal Medicine of East Haven) and
Dr. Kenneth Kramer (Connecticut Orthopaedic Specialists).

Q.  Report of Expert Economist, Josefina Tranfa-Abboud, dated March 9, 2020.

R.  Supplemental Report of Expert Economist, Josefina Tranfa-Abboud, dated August 18, 2021.

     [Plaintiff objects to untimely disclosure after discovery. FRCP 26(a)(e); FRCP 37(c)(1)]

S.  Report of Expert Forensic Psychologist, Dr. Lisa Rocchio, dated March 9, 2020.

T.  Plaintiff's W-2 Wage and Tax Statements for years 2012 through 2017.

     [Plaintiff objects per Fed. R. Evid. 403 because any probative value is substantially out
weighed by danger of unfair prejudice, confusing the issues and misleading the jury;
W-2s do not reflect the plaintiff's actual tax rate and will confuse and  mislead a jury into
thinking that withholding amounts on w-2s reflect a person's actual tax rate]

Each party reserves the right to offer into evidence any of the exhibits listed by the opposing party to which it has no objections and any impeachment exhibits or exhibits required by way of rebuttal.  Each party reserves the right to object to any exhibits not listed herein that are offered for impeachment or rebuttal.

xi.     The Plaintiff claims the following damages:  The plaintiff's economist will testify that his lost earnings capacity is between $2,434,569 and $3,070,159 depending on a retirement age of 60 or 65. This calculation is based on the Railroad wages, the health benefits and retirement benefits minus the earnings capacity to work in alternative employment based on the report from the plaintiff's vocational expert and being provided with health and retirement benefits. Also, the

plaintiff claims pain, suffering, and mental anguish. In addition, the plaintiff is claiming punitive damages and attorneys fees.

xii.    The parties do not consent to a less-than-unanimous verdict.

Respectfully submitted,
FOR THE PLAINTIFF


By    /s/  George J. Cahill, Jr.
        George J. Cahill, Jr. (ct04485)
        CAHILL & PERRY, P.C.
        43 Trumbull Street
        New Haven, Connecticut 06510
        Telephone: (203) 777-1000
        Fax: (203) 865-5904


FOR THE DEFENDANTS,
METRO-NORTH RAILROAD COMPANY,
METROPOLITAN TRANSPORTATION
AUTHORITY, et al.


By    /s/ Steve S. Efron
        Steve S. Efron, Attorney at Law
        237 West 35th Street, Suite 1502
        New York, NY 10001
        Tel: 212-867-1067
        Fax: 212-682-5958