UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------------x
THOMAS M. MORAN,

                        Plaintiff,

       - against -                        19-cv-3079 (AT)(KHP)

MTA METRO-NORTH RAILROAD COMPANY,
PO NICHOLAS STRYPE (individual capacity),
PO DOUGLAS COHEN (individual capacity), PO LUIGI
SEIDITA (individual capacity), PO JASON NANDOO
(individual capacity), PO JOSEPH TERACCIANO
(individual capacity), and PO RICHARD DOE (Full names
and number of whom are unknown at present, and other
unidentified members of the MTA Police Department in
their individual capacities),

                        Defendants.
------------------------------------------------------------------x

## AMENDED MEMORANDUM OF LAW IN SUPPORT
## OF DEFENDANTS' MOTIONS IN LIMINE

Steve S. Efron
Attorney for Defendants
237 West 35th Street - Suite 1502
New York, New York 10001
(212) 867-1067

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-------------------------------------------------------------------x
THOMAS M. MORAN,

                              Plaintiff,

                - against -                                          19-cv-3079 (AT)(KHP)

MTA METRO-NORTH RAILROAD COMPANY,
PO NICHOLAS STRYPE (individual capacity),
PO DOUGLAS COHEN (individual capacity), PO LUIGI
SEIDITA (individual capacity), PO JASON NANDOO
(individual capacity), PO JOSEPH TERACCIANO
(individual capacity), and PO RICHARD DOE (Full names
and number of whom are unknown at present, and other
unidentified members of the MTA Police Department in
their individual capacities),

                              Defendants.
-------------------------------------------------------------------x

## AMENDED MEMORANDUM OF LAW IN SUPPORT OF DEFENDANTS' MOTIONS IN LIMINE

### Preliminary Statement

      The MTA Metro-North Railroad Company ("Metro-North") and five police officers employed by the Metropolitan Transportation Authority ("MTA")(collectively defendants) submit this memorandum in support of their motions in limine.

      Although the Court determined on defendants' motion for partial summary judgment that unresolved issues of fact preclude a finding that Metro-North cannot be held liable for the actions of the MTA police officers on a theory of respondeat superior, the parties are still at odds as to how the issue should be presented to the jury and what evidence may be adduced. Plaintiff seeks to admit into evidence a Trackage Rights Agreement executed in 1983 (Exhibit 15) and an Amended and Restated Service Agreement dated June 21, 1985 (Exhibit 19), neither of which has any relevance to the issue so far as defendants can discern. Plaintiff, in addition, lists Susan Sarch, Metro-North's general counsel, as a witness who will testify concerning "contractual agreements" between the MTA and Metro-North – presumably Exhibits 15 and 19. But plaintiff has not identified the relevant provisions of the "contractual agreements," which were never

exchanged during discovery proceedings, and fails to explain why the testimony of Susan Sarch, or any other witness, would be needed unless the contractual provisions on which plaintiff intends to rely – not yet identified – are ambiguous. These and other matters are discussed below.

## ARGUMENT

### A. PLAINTIFF'S BELATED IDENTIFICATION OF WITNESS TESTIMONY AND EXHIBITS THAT ARE IRRELEVANT TO HIS CLAIM THAT METRO-NORTH LIABILITY CAN BE PREMISED ON A RESPONDEAT SUPERIOR OR AGENCY THEORY SHOULD BE PRECLUDED

Defendants argued on their motion for partial summary judgment that the actions of the MTA police officers could not be imputed to Metro-North on a theory of respondeat superior in the absence of a master-servant relationship. See Defendants' Memorandum of Law in Support of Motion for Partial Summary Judgment at 15-16. Plaintiff responded that the MTA officers "were working in furtherance of Metro-North's operational activities" and, on that basis, could be held liable as agents of Metro-North. See Plaintiff's Memorandum in Opposition at 12-14. Defendants replied that it is not enough to show that the officers acted in furtherance of Metro-North's operations; it must also be shown that the MTA contracted with Metro-North to provide police services, but no such contract was shown to exist here. See Defendants' Reply Memorandum of Law at 2-3; e.g., Thomas v. Grigorescu, 582 F. Supp. 514, 517-18 (S.D.N.Y. 1984), and more recently, Koehler v. Metropolitan Transp. Auth., 2021 U.S. Dist. LEXIS 155005, *41-48 (E.D.N.Y. Aug. 17, 2021); Bush v. Metro-North Commuter R.R. Co., 2021 U.S. Dist. LEXIS 136520, *14-19 (D. Conn. July 22, 2021).

The Court held that whether MTA officers were agents of Metro-North, such that the conduct of the officers can be charged to Metro-North on a respondeat superior theory, presents an issue of fact for the jury to determine. Moran v. MTA Metro-North R.R., 2021 U.S. Dist.

LEXIS 62861, *12-14 (S.D.N.Y. March 31, 2021).[1]

Plaintiff is now in search of a contract between the MTA and Metro-North that provides for police services. In the amended pretrial order he identifies Susan Sarch, Metro-North's general counsel, as a witness who "will testify concerning the contractual agreements between the MTA and the defendant Metro-North Railroad." See Amended Joint Pre-Trial Order, Plaintiff's Witness List No. 16. Further, plaintiff identifies as trial exhibits a "Trackage Rights Agreement" dated 1983, between Metro-North, MTA, Connecticut Department of Transportation and Consolidated Rail Corporation, and a 1985 "Amended and Restated Service Agreement" between Metro-North, MTA and the Connecticut Department of Transportation. Id., Plaintiff's Exhibit List Nos. 15 and 19. The witness and the contracts were not disclosed in the course of discovery proceedings, which might be reason enough to preclude them at trial. Patterson v. Balsamico, 440 F.3d 104, 117-18 (2d Cir. 2006).[2] But there is a more fundamental reason to preclude the contracts and the proposed testimony of Susan Sarch. One can scour the contracts and its attachments without overlooking a single word and still not find any reference to an agreement on the part of the MTA to provide police services to Metro-North. The contracts, in short, are not relevant to any issue in the case. Busher v. Barry, 2019 U.S. Dist. LEXIS 220082, *7 (S.D.N.Y. Sept. 18, 2019)("The Federal Rules of Evidence provide that only relevant evidence is admissible").

---

[1] In view of the Court's determination, defendants are submitting a proposed jury instruction setting forth the several factors that may be considered in deciding whether a master-servant relationship exists under common law principles. Defendants are not, however, waiving their contention that without evidence of a contract for police services – and no such contract has been produced here – the MTA police officers cannot be deemed to be agents of Metro-North. Sinkler v. Missouri Pac. R.R., 356 U.S. 326 (1958).

[2] Plaintiff objects on that same ground to defendants' post-discovery identification of Steve Weiss as a witness (No. 17 on defendants' witness list) and the supplemental report of defendants' economist (Exhibit R on defendants' exhibit list). Weiss will testify to matters occurring after the close of discovery – specifically the Covid pandemic and resulting changes to Metro-North's service and schedule – that have altered significantly the computation of lost wages and benefits, as related in the economist's supplemental report. Rule 26 requires updates of that nature.

The testimony of Susan Sarch cannot transform an irrelevant contract into one that somehow bears on the issues in this case. "Extrinsic evidence of the parties' intent may be considered only if the agreement is ambiguous, which is an issue of law for the courts to decide." Sigmon v. Goldman Sachs Mortg. Co., 800 Fed. Appx. 25, *27 (2d Cir. Feb. 4, 2020)(internal quotation marks omitted)(summary order); see also In re Okura & Co., 249 B.R. 596, 614 (S.D.N.Y. 2000)("When a written contract is clear and unequivocal, its meaning must be determined by its contents alone, without resort to extrinsic evidence")(internal quotation marks omitted).

Furthermore, even assuming the existence of some ambiguity in the Trackage Rights Agreement or the Amended and Restated Service Agreement, plaintiff is only guessing that Susan Sarch can offer testimony to resolve the ambiguity or has knowledge of other, unidentified "contractual agreements" that may be relevant to the question of whether MTA officers are agents of Metro-North. In effect, plaintiff is impermissibly seeking to conduct discovery at the time of trial. United States v. Northern Metro. Found. for Healthcare Ctr., 2021 U.S. Dist. LEXIS 154046, *13 (E.D.N.Y. Aug. 16, 2021)("A party may not employ Rule 45 to seek documents after the close of discovery where the scope of the request is broad and clearly is designed for discovery, not last-minute trial needs")(internal quotation marks omitted); Lumbermens Mut. Cas. Co. v. Flow Int'l Corp., 2013 U.S. Dist. LEXIS 87396, *13 (N.D.N.Y. June 21, 2013)("The law is clear that trial subpoenas cannot be used to obtain discovery not previously sought").

### B. PLAINTIFF'S PROPOSED JURY INSTRUCTION ON METRO-NORTH'S NONDELEGABLE DUTY IS NOT RELEVANT TO ANY ISSUE IN THE CASE AND WILL SERVE NO PURPOSE BUT TO CONFUSE THE JURY

Plaintiff's proposed instruction on Metro-North's nondelegable duty to provide its employees with a safe place to work is irrelevant to the issues in the case and, more than that, distorts the applicable law and concludes with a directive that the jury return a verdict against Metro-North:

> If the plaintiff's injuries were caused in whole or in part, even to the slightest, by the negligence of any MTA police officers acting in the course of their employment, then they are deemed as a matter of law to be Metro North's agents.

Plaintiff's Proposed FELA instructions at pgs. 8, 11.

There is no legal precedent for that pronouncement. Metro-North's nondelegable duty to provide plaintiff with a safe workplace does not, under the statute, make Metro-North an insurer of plaintiff's safety. "The statute as it stands requires negligence of the carrier or its agents." Thomas, 582 F. Supp. at 518. Thus, in this case, the Court has already determined that Metro-North could not have anticipated the alleged misconduct of the MTA police officers and, accordingly, cannot be held liable for it under principles of common law negligence. Moran, 2021 U.S. Dist. LEXIS 62861, at *9. Plaintiff's remaining theory of negligence against Metro-North, which the Court found sufficient to withstand defendants' summary judgment motion, is the failure of Metro-North's trainmaster, Douglas Martin, "to take steps to resolve the disagreement between Plaintiff and MTA Police Officers, to adequately communicate Metro-North's policies and procedures concerning the conductor's authority to deny a passenger a ride, and to go onto the train to determine whether the Passenger should have been removed." Id. at *11.

Since the negligence which plaintiff seeks to attribute to Metro-North's trainmaster does not involve a delegation of its duty to a third party (no one questions that Trainmaster Martin was Metro-North's employee), there is no need to instruct the jury that Metro-North's duty to provide a safe workplace is nondelegable. As expressed by one court, giving a superfluous instruction would serve no purpose other than to wrap an "otherwise sound charge in confusing and irrelevant cotton." McGrory v. City of New York, 2004 U.S. Dist. LEXIS 20425, *44 (S.D.N.Y. Oct. 8, 2004)(internal quotation marks omitted). Actually, in the form adopted by plaintiff, the proposed instruction is more than merely confusing, it represents an effort to bypass a showing of negligence and sneak respondeat superior into the case without requiring plaintiff to establish by appropriate proof that the MTA officers were agents of Metro-North. Time, Inc. v. Peterson

Publ'g Co., 173 F.3d 113, 118 (2d Cir. 1999)("A jury charge is erroneous if it misleads the jury as to the correct legal standard, or if it does not adequately inform the jury of the law")(internal quotation marks omitted).

### C. THE MTA POLICE OFFICERS RESERVE THE RIGHT TO SEEK DISMISSAL OF THE CONSTITUTIONAL CLAIMS ON GROUNDS OF QUALIFIED IMMUNITY

"Qualified immunity shields law enforcement officers from § 1983 claims for money damages provided that their conduct does not violate clearly established constitutional rights of which a reasonable person would have been aware." Zalaski v City of Hartford, 723 F.3d 382, 388 (2d Cir. 2013). "[T]he inquiry is not how courts or lawyers might have understood the state of the law at the time of the challenged conduct," but "whether it would be clear to a reasonable officer that his conduct was unlawful in the situation he confronted." Id. at 389 (citing Saucier v. Katz, 533 U.S. 194, 202 (2001))(internal quotation marks omitted). In other words, "even if a right is clearly established in certain respects, qualified immunity will still shield an officer from liability if 'officers of reasonable competence could disagree' on the legality of the action at issue in its particular factual context." Id. (citing Malley v. Briggs, 475 U.S. 335, 341 (1986)). "[Q]ualified immunity provides a broad shield" and "employs a deliberately 'forgiving' standard of review" that "affords officials 'breathing room to make reasonable but mistaken judgments' without fear of potential liability." Id.

Absent definitive judicial precedent, "[a]n officer is entitled to qualified immunity against a suit for false arrest if he can establish that he had 'arguable probable cause' to arrest the plaintiff." Garcia v. Doe, 779 F.3d 84, 92 (2d Cir. 2014). "Arguable probable cause exists if either (a) it was objectively reasonable for the officer to believe that probable cause existed, or (b) officers of reasonable competence could disagree on whether the probable cause test was met." Id. (quoting Zalaski, 723 F.3d at 390).

"Even where an officer is found to have used excessive force...the doctrine of qualified immunity will shield that officer from liability for damages if his conduct did not violate clearly

6

established statutory or constitutional rights of which a reasonable person would have known." Outlaw v. City of Hartford, 884 F.3d 351, 366 (2d Cir. 2018); Stephenson v. Doe, 332 F.3d 68 (2d Cir. 2003).

D.    **COUNSEL SHOULD BE PROHIBITED FROM SUGGESTING SPECIFIC DOLLAR AMOUNTS**

The amount of non-pecuniary damages warranted by the evidence will be for the jury to determine, and they should be permitted to make that determination without the recommendation or suggestion of a specific amount by plaintiff's counsel in summation or at any other stage of the trial. As the Second Circuit has explained:

> A jury is likely to infer that counsel's choice of a particular number is backed by some authority or legal precedent. Specific proposals have a real potential to sway the jury unduly. While under the circumstances present here we do not yet reach the point of holding that it is error to permit such recommendations, it is not a desirable practice. We encourage trial judges to bar such recommendations.

Consorti v. Armstrong World Indus., Inc., 72 F.3d 1003, 1006 (2d Cir. 1995), vacated on other grounds, 518 U.S. 1031 (1996).

Courts have heeded the Second Circuit's advice and barred counsel from arguing specific dollar amounts to the jury. Stern v. Shammas, 2015 U.S. Dist. LEXIS 97879, *43 (E.D.N.Y. July 27, 2015); Phillips v. City of New York, 871 F. Supp.2d 200, 208 (E.D.N.Y. 2012).

## CONCLUSION

For the reasons stated above, defendants respectfully request that their motions be granted in all respects.

Dated: New York, New York
       July 22, 2022

                                          Respectfully submitted,

                                          _____/s/_____
                                          Steve S. Efron