```
UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
THOMAS M. MORAN,

                           Plaintiff,

        -against-

MTA METRO-NORTH RAILROAD COMPANY, P.O.
NICHOLAS STRYPE (individual capacity), P.O.
DOUGLAS COHEN (individual capacity), PO LUIGI
SEIDITA (individual capacity), PO JASON NANDOO
(individual capacity), PO JOSEPH TERACCIANO
(individual capacity), and PO RICHARD DOE (Full
names and number of whom are unknown at present, and
other unidentified members of the MTA Police
Department in their individual capacities),

                           Defendants.
```

```
USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #: _____
DATE FILED:  4/6/2023   
```

19 Civ. 3079 (AT)

**ORDER**

ANALISA TORRES, District Judge:

Plaintiff, Thomas M. Moran, brings this action against Defendants MTA Metro-North Railroad Company ("Metro-North"), and Metropolitan Transportation Authority ("MTA") Police Officers Nicholas Strype, Douglas Cohen, Luigi Seidita, Jason Nandoo, Joseph Teracciano, and Richard Doe (collectively, the "MTA Police Officers"), under the Federal Employer Liability Act ("FELA"), 45 U.S.C. § 51 *et seq.*, and 42 U.S.C. § 1983, alleging violations of his rights under the First, Fourth, Fifth, and Fourteenth Amendments to the Constitution. FAC, ECF No. 48. On March 31, 2021, the Court denied, *inter alia*, Defendants' motion for partial summary judgment as to Plaintiff's FELA claim against Metro-North under a theory of respondeat superior with respect to the MTA Police Officers (the "Order"). Order at 1, 9–10, ECF No. 87.[1] For the reasons stated below, the Court exercises its discretion under Federal Rule of Civil

---

[1] In the Order, the Court granted Defendants' motion for partial summary judgment as to Plaintiff's § 1983 claim premised on malicious prosecution against the MTA Police Officers and denied Defendants' motion in all other respects. Order at 1–2. On June 22, 2022, the Court reconsidered the Order and reinstated Plaintiff's malicious prosecution claim as to Strype. ECF No. 115.

Procedure 54(b) to *sua sponte* reconsider and revise the Order.  Upon reconsideration, that portion of the Order denying summary judgment to Defendants on Plaintiff's FELA claim under the theory of respondeat superior is VACATED, *see* Order at 9–10, and Defendants' motion for partial summary judgment on Plaintiff's FELA claim against Metro-North under the theory of respondeat superior is GRANTED.

## BACKGROUND

The Court presumes familiarity with the facts and procedural history outlined in the Order and describes them briefly here.  Order at 1–4.  Plaintiff was a conductor for Metro-North.  56.1 Stmt. ¶ 2, ECF No. 83.  On August 4, 2017, Plaintiff was working on the 1500 train, scheduled to run from Grand Central Terminal ("Grand Central") to New Haven.  *Id*. ¶ 4.  Although the train was scheduled to briefly stop at the Harlem-125th Street station, passengers boarding the train at Grand Central were not permitted to disembark at that station.  *Id*. ¶ 5.

Before the train departed from Grand Central, Plaintiff spoke with a wheelchair-bound passenger on the platform who wished to travel to the Harlem-125th Street station.  *Id*. ¶ 8.  Although Plaintiff told the passenger that the train would not be stopping there, the passenger boarded the train.  *Id*. ¶¶ 8, 11.

The parties dispute, in substantial part, what happened next.  *Id*. ¶ 12.  According to Plaintiff, the passenger appeared intoxicated.  FAC ¶ 24.  After Plaintiff informed the passenger that he could not ride the train to Harlem-125th Street, the passenger began cursing and yelling.  *Id*.; Moran Dep. at 97:11–98:15, ECF No. 80-2.  Plaintiff then sought help from the MTA Police Officers, but he claims that they did not provide assistance.  Moran Dep. at 99:7-9, 106:5-15.  Plaintiff went to Trainmaster Douglas Martin's office, *id.* at 108:17–109:2, where he found Seidita speaking with Martin, *id.* at 112:3-9; Seidita Dep. at 42:14–43:7, ECF No. 80-4.  Seidita

first enquired of Martin whether a conductor could refuse to transport a passenger with a valid ticket, then asked for Plaintiff's name and employee number, which Plaintiff refused to provide. Seidita Dep. at 49:22–50:14; Moran Dep. at 113:7-13.  Upon leaving Martin's office, Plaintiff exchanged heated words with a few other MTA employees, although the parties dispute whether Plaintiff used threatening or abusive language at that time.  Moran Dep. at 114:6–115:19; Seidita Dep. at 39:14–40:5.

As Plaintiff began walking back to the train, the officers followed him.  Moran Dep. at 131:14-20; Pl. Ex. 1C at 5:19–6:55.  Cohen grabbed Plaintiff by the arm and threw him down. Moran Dep. at 132:19-24, 133:12-16.  Cohen, with the assistance of other officers, placed Plaintiff in handcuffs.  Cohen Dep. at 21:9-18, ECF No. 80-6; Pl. Ex. 1C at 5:25–5:55.  Plaintiff was then taken to a police station at Grand Central, and ultimately transported to Manhattan Central Booking, where he was arraigned and released on his own recognizance.  Moran Dep. at 135:13–136:8, 146:6-20; 147:22–148:3; 149:5-9; 150:17-24.  On February 5, 2018, the charges against Plaintiff were dismissed on motion of the district attorney.  ECF No. 80-10.

## DISCUSSION

I. <u>Legal Standard</u>

A. *Sua Sponte* Reconsideration

Under Rule 54 of the Federal Rules of Civil Procedure, the Court has the inherent power to reconsider any of its decisions prior to the entry of a final judgment adjudicating all claims at issue. Fed. R. Civ. P. 54(b).  "[A] district court . . . possesses the inherent authority to *sua sponte* reconsider its own interlocutory orders before they become final." *Chartis Seguros Mexico, S.A. de C.V. v. HLI Rail Rigging, LLC*, No. 11 Civ. 3238, 2015 WL 545565, at *2 (S.D.N.Y. Feb. 9, 2015).  "*Sua sponte* reconsideration is appropriate where there is a need to

3

correct a clear error or prevent manifest injustice, there is an intervening change in the applicable law, or new evidence is available." *Id.* (citing *Benavidez v. Piramides Mayas Inc.*, No. 09 Civ. 9574, 2013 WL 2357527, at *3 (S.D.N.Y. May 24, 2013)). "Whether such revision is appropriate in any given case is within the sound discretion of the trial judge." *Acha v. Beame*, 570 F.2d 57, 63 (2d Cir. 1978).

   B.   Agency Theory Under FELA

  FELA provides, in relevant part, that "[e]very common carrier by railroad . . . shall be liable in damages to any person suffering injury while he is employed by such carrier . . . [for injury] resulting in whole or in part from the negligence of any of the officers, agents, or employees of such carrier." 45 U.S.C. § 51. When analyzing claims under FELA, courts do not look to common-law principles of liability. *See Sinkler v. Mo. Pac. R.R. Co.*, 356 U.S. 326, 329 (1958). "[I]t was the conception of [FELA] that the railroad was a unitary enterprise, its economic resources obligated to bear the burden of all injuries befalling those engaged in the enterprise arising out of the fault of any other member engaged in the common endeavor." *Id.* at 330. Accordingly, courts give an "accommodating scope" to the word "agents" under FELA "to give vitality to the standard governing the liability of carriers to their workers injured on the job." *Id.* at 330–31. "[W]hen a railroad employee's injury is caused in whole or in part by the fault of others performing, under contract, operational activities of his employer, such others are 'agents' of the employer within the meaning of . . . FELA." *Id.* at 331–32. "In other words, the employer railroad is liable for the negligence of a third person, hired by the railroad, to perform operational activities required to carry out railroad functions." *Koehler v. Metro. Transp. Auth.*, No. 16 Civ. 3, 2021 WL 3634777, at *13 (E.D.N.Y. Aug. 17, 2021) (citation omitted).

4

*Sinkler* and its progeny establish that where "(1) a contract exists between the principal and the third party, and[] (2) the third party is performing operational activities of the principal, the principal is liable for the third party's negligence under FELA, provided the other conditions of the statute are met." *Bush v. Metro-N. Commuter R.R. Co.*, 552 F. Supp. 3d 298, 302 (D. Conn. 2021). Courts apply a generous interpretation of *Sinkler* in determining what constitutes the "operational activities" of a railroad. *Mele v. Metro. Transp. Auth.*, No. 04 Civ. 3661, 2006 WL 2255080, at *4 (S.D.N.Y. Aug. 4, 2006). "However, in each case, as in *Sinkler*, the negligent party was operating under a contract with the railroad, which hired them." *Koehler*, 2021 WL 3634777, at *13. "[I]t is the contract which permits a finding that the negligent party was the 'agent' of the employer. In the absence of such a contract, there is no basis for liability under the FELA." *Id.* (citation omitted).

II.  Analysis

The parties do not dispute that the MTA Police Officers were neither officers nor employees of Metro-North under 45 U.S.C. § 51. *See* ECF No. 124-1 at 2–4; ECF No. 126 at 2–6, 8–13. The MTA Police Officers are employed, compensated, and supervised by the MTA. *See* N.Y. Pub. Auth. Law § 1266-h; *Bush*, 552 F. Supp. 3d at 301. Therefore, the only relevant question is whether the MTA Police Officers qualify as agents of Metro-North within the meaning of FELA. *See* 45 U.S.C. § 51; *Sinkler*, 356 U.S. at 331–32. In the Order, the Court held that "[a] juror could conclude that the MTA Police Officers were acting as agents of Metro-North and 'in furtherance of the employer's business.'" Order at 9 (quoting *Kelly v. Metro-N. Commuter R.R.*, 37 F. Supp. 2d 233, 239 (S.D.N.Y. 1999)). Under Rule 54, the Court exercises its discretion and *sua sponte* reconsiders and revises its holding as that aspect of the Court's decision is clearly erroneous, *see Chartis Seguros*, 2015 WL 545565, at *2, because it fails to

5

consider the first prong under *Sinkler*: whether the MTA Police Officers were acting pursuant to a contract with Metro-North, *Bush*, 552 F. Supp. 3d at 302. Further, the Court finds that new evidence in the form of deposition testimony from Susan Sarch, Metro-North's general counsel, and the Amended Restated Service Agreement ("ARSA") supports reconsideration, and reconsideration is warranted to prevent manifest injustice to Defendants.

In her deposition, Sarch testified that she is not aware of any contract or agreement between Metro-North and the MTA that governs the employment of the MTA Police Officers. Sarch Dep. at 73:4–76:18, ECF No. 155-1. In 1997, the MTA police force was created by statutory enactment. *See* N.Y. Pub. Auth. Law § 1266-h. Previously, Metro-North employed its own police force to work inside Grand Central. Sarch Dep. at 55:11–59:7. The MTA police force's authority to patrol Grand Central and other transportation facilities is conferred by statute. *See* N.Y. Pub. Auth. Law § 1266-h. Here, there are no facts in the record demonstrating that the MTA Police Officers were acting pursuant to a contract with Metro-North. *See Bush*, 552 F. Supp. 3d at 306.

Plaintiff contends that ARSA "is clearly a contract between the MTA and Metro[-]North for operating the MTA's and Metro[-]North's joint railroad operations in Grand Central . . . ." ECF No. 126 at 3; *see also* ECF No. 148 at 5; ECF No. 155 at 1. However, ARSA was signed in 1985, more than ten years before the MTA police force was created under New York statutory law. *See Bush*, 552 F. Supp. 3d at 306 n.5. And, ARSA does not reference the MTA police force or police services provided by the MTA to Metro-North. *See* ECF No. 126 at 4–6. ARSA is a contract between Metro-North, MTA, and the Connecticut Department of Transportation for jointly operating and providing commuter rail services; it cannot form the basis for finding that a

6

contractual relationship exists between the MTA Police Officers and Metro-North such that the MTA Police Officers are agents of Metro-North within the meaning of FELA.

Further, even assuming that a contract is not necessary to establish an agency relationship between a third party and a railroad under FELA, there are no facts in the record establishing that Metro-North controls or chooses the MTA police force such that an agency relationship exists. *See Bush*, 552 F. Supp. 3d at 307. Metro-North does not hire the MTA police force or have the right to discipline or fire the MTA Police Officers. Sarch Dep. at 73:9-21. And, Metro-North does not control where the MTA police force patrols and which officers are assigned to Grand Central. *Id.* at 75:12–76:1. Therefore, the Court determines that no reasonable jury could conclude that the MTA Police Officers were agents of Metro-North, and, as such, Metro-North cannot be held liable for the actions of the MTA Police Officers.

Accordingly, upon reconsideration, Defendants' motion for partial summary judgment on Plaintiff's FELA claim against Metro-North under the theory of respondeat superior with respect to the MTA Police Officers is GRANTED.

## CONCLUSION

For the reasons stated above, the portion of the Order denying summary judgment to Defendants on Plaintiff's FELA claim against Metro-North is VACATED; and, upon reconsideration, Defendants' motion for partial summary judgment on Plaintiff's FELA claim against Metro-North under the theory of respondeat superior as to the MTA Police Officers is GRANTED. This order does not alter the Court's holding that Plaintiff has raised a triable issue of fact under a theory of direct negligence with respect to Martin. *See* Order at 6–9.

SO ORDERED.

Dated: April 6, 2023
       New York, New York

_____
ANALISA TORRES
United States District Judge