UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------------------x
THOMAS M. MORAN,

                              Plaintiff,

        - against -                                    19-cv-3079 (AT)

MTA METRO-NORTH RAILROAD COMPANY,
PO NICHOLAS STRYPE (individual capacity),
PO DOUGLAS COHEN (individual capacity), PO LUIGI
SEIDITA (individual capacity), PO JASON NANDOO
(individual capacity), PO JOSEPH TERACCIANO
(individual capacity), and PO RICHARD DOE (Full names
and number of whom are unknown at present, and other
unidentified members of the MTA Police Department in
their individual capacities),

                              Defendants.
------------------------------------------------------------------------x

**DEFENDANTS' RULE 50 MOTION**

A. **THE EVIDENCE DOES NOT SUPPORT THE FELA CLAIM**

      Following the Court's dismissal of so much of plaintiff's FELA claim as sought to impose liability on Metro-North premised on a respondeat superior theory of liability, the only remaining FELA claim is based on the alleged negligence of Trainmaster Doug Martin in failing to come to plaintiff's assistance in a timely manner. To support this direct negligence claim, plaintiff must present proof establishing these elements:

> Plaintiffs asserting negligence under the FELA must establish the traditional common law elements: (1) duty; (2) breach; (3) foreseeability; and (4) causation of injury.

Koehler v. Metropolitan Transportation Auth., 214 F. Supp.3d 171, 177 (E.D.N.Y.).

      Here, plaintiff's claim fails for lack of foreseeability.  Kelly v. Metro-North Commuter

R.R., 37 F. Supp.2d 233, 237 (S.D.N.Y.)("Where a plaintiff seeks to impose liability pursuant to a theory of direct negligence by the carrier, foreseeability is undoubtedly 'an essential ingredient' of the claim, since the duty the carrier allegedly negligently breached encompasses only foreseeable events"). Martin could not foresee a danger to which plaintiff did not alert him. The evidence establishes conclusively that Martin was not apprised of any need to respond immediately to plaintiff's pronouncement that he would not "ride that" passenger:

> Q. Did you see any immediate need to leave your office?
>
> A. Not an urgent need to leave the office, but I did want to leave the office to find out what the situation was.
>
> Q. Did you think if you delayed that it would result in injury or harm to somebody?
>
> A. No.

Trial Trans't at 648.

## B. QUALIFIED IMMUNITY

"Qualified immunity shields law enforcement officers from § 1983 claims for money damages provided that their conduct does not violate clearly established constitutional rights of which a reasonable person would have been aware." Zalaski v. City of Hartford, 723 F.3d 382, 388 (2d Cir. 2013). "[T]he inquiry is not how courts or lawyers might have understood the state of the law at the time of the challenged conduct," but "whether it would be clear to a reasonable officer that his conduct was unlawful in the situation he confronted." Id. at 389 (citing Saucier v. Katz, 533 U.S. 194, 202 (2001))(internal quotation marks omitted). In other words, "even if a right is clearly established in certain respects, qualified immunity will still shield an officer from liability if 'officers of reasonable competence could disagree' on the legality of the action at issue

in its particular factual context." Id. (citing Malley v. Briggs, 475 U.S. 335, 341 (1986)). "[Q]ualified immunity provides a broad shield" and "employs a deliberately 'forgiving' standard of review" that "affords officials 'breathing room to make reasonable but mistaken judgments' without fear of potentially liability." Id.

**1. False Arrest - Disorderly Conduct**

The disorderly conduct statute, Penal Law 240.20, as pertinent this case, provides that a person is guilty of disorderly conduct when,

> with intent to cause public inconvenience, annoyance or alarm, or recklessly creating a risk thereof:
>
> 1. He engages in fighting or in violent, tumultuous or threatening behavior; or
>
> * * *
>
> 3. In a public place, he uses abusive or obscene language, or makes an obscene gesture.

Penal Law 420.20.

Although plaintiff questions whether the provisions can even be deemed constitutional as applied to the conduct defendants attribute to plaintiff, a reasonable police officer would not necessarily have any reason to believe that the provisions cannot be enforced in these circumstances. See Amore v. Novarro, 624 F.3d 522 (2d Cir. 2010)(police officer entitled to qualified immunity for making arrest on charge of loitering in violation of statute that had been declared unconstitutional ten years earlier).

Nor can police officers be faulted for finding obscene language, shouted in a public space, to be violative of the disorderly conduct statute. See Smith v. City of New York, 2021 U.S. Dist. LEXIS 178756 (S.D.N.Y. Sept. 20, 2021)("It is undisputed that, in the middle of the day on a

3

public sidewalk in New York City, Plaintiff was shouting and cursing loud enough that the officers could hear him from across the street"); Hughes v. Lebron, 2016 U.S. Dist. LEXIS 127569 (S.D.N.Y. Sept. 19, 2016)("it is undisputed that, in the moments leading up to the arrest, Hughes unleashed an expletive-laden tirade against Lebron in the Courthouse lobby").

A general verdict will not enable the parties and the Court to determine the factual findings on which the verdict rests, and thus whether the officers are entitled to qualified immunity.  The use of special interrogatories can resolve that issue.  Stephenson v. Doe, 332 F.3d 68, 81(2d Cir. 2003)("there may be factual disputes overlapping the excessive force and qualified immunity issues that the jury must find").  An appropriate interrogatory here might be: Did plaintiff use abusive and obscene language in a public space, causing alarm or creating a risk of causing alarm.

**2. Excessive Force**

Whether the officers are shielded by qualified immunity from plaintiff's excessive force claim can be tested using the same procedure.  Rizk v. Mehirdel, 2022 U.S. Dist. LEXIS 182604, at *13 (E.D.N.Y. Oct. 5, 2022).  The jury can be asked whether plaintiff was "kneed" in the back by one or more of the officers.  Stephenson, 332 F.3d at 81.

Dated: New York, New York
        April 20, 2023

                                        _____/s/____
                                        Steve S. Efron