App'x 7

1  posttraumatic stress disorder, but by this time, with
2  treatment, his functioning in other domains was good.
3  Q.  I will represent to you that the other day plaintiff
4  testified that he had a fairly frequent incidence of symptoms.
5  Is that inconsistent with your prognosis?
6  A.  Are you speaking about posttraumatic stress symptoms?
7  Q.  Yes.
8  A.  Posttraumatic stress disorder?
9  Q.  Yes.
10 A.  No, it would not be.  With posttraumatic stress disorder,
11 often the stress is what we call cued.  So when somebody is
12 forced to, you know, think about traumatic events, talk about
13 traumatic events, certainly the experience of testifying and
14 having to be in court is highly stressful, most individuals
15 with posttraumatic stress disorder as they are prepping for
16 court, as they are having to review and rehash, you are going
17 to see a marked increase in symptoms with.  That would be
18 expected.  As a therapist, when I am working with someone, part
19 of my job is to prepare them for that, that going for trial is
20 incredibly stressful for anyone.  So that would not surprise
21 me.
22          As I said, when he has to deal with things involving
23 the railroad and police, his symptoms are likely to increase.
24 When that's not happening, I would expect that his functioning
25 in those other domains would revert back to normal, good

1  functioning, the way it was when I evaluated him.
2  Q.  A few minutes ago you used the word "intermittent."  Is
3  that sort of the definition of how intermittent --
4  A.  Intermittent -- with posttraumatic stress disorder and,
5  frankly, pretty much any psychological disorder, you are going
6  to see over the course of time -- if somebody has a chronic
7  illness, even a medical illness, you are going to see where
8  there are going to be times where there are symptoms, perhaps
9  they are going to be more intense, times when they are less
10 intense, times when perhaps they remit and they go away
11 entirely.  So it is kind of this waxing and waning.
12        So intermittent means that you are not experiencing
13 the symptoms all the time every day, but around certain sets of
14 circumstances at certain times.  So that's what I mean by
15 intermittent.  And I would expect that, you know, in the months
16 preceding these court hearings, you would see an increase in
17 symptoms and an increase in their frequency.
18 Q.  Now, what seems like quite a while ago now you discussed
19 that the consideration is the person experienced the event as a
20 threat.  Is it possible based on your experience, especially as
21 a clinician, that someone would be experiencing PTSD even after
22 a lawful arrest?
23 A.  Absolutely.
24 Q.  And why is that?
25 A.  Because a person can experience --

1              (In open court)
2              THE COURT:  Go ahead.
3              MS. CYR:  Your Honor, at this time defendants would
4     add the following be entered into evidence:
5              First, although we have identified --
6              JUROR:  The monitor is on.  We are seeing e-mails.
7              MS. CYR:  Oh geez.
8              We would like to introduce the entirety of Exhibit M,
9     which is the Metro-North security camera video clips as they
10    are in a different order than plaintiff's.
11             Second, we would move to admit Exhibit Q, the report
12    of expert economist Josefina Tranfa-Abboud, dated March 9,
13    2020, and we would move to have admitted into evidence
14    Exhibit R, the supplemental report of expert economist Josefina
15    Tranfa-Abboud, dated August 18, 2020 -- 2021, excuse me.
16             THE COURT:  Any objection?
17             MR. CAHILL:  No objection, your Honor.
18             MR. PERRY:  There are redactions, according to the
19    Court's prior ruling, that will be addressed.
20             THE COURT:  All of those items are admitted.
21             (Defendant's Exhibits M, Q, R received in evidence)
22             MS. CYR:  Thank you, your Honor.
23             THE COURT:  Does the defense rest?
24             MR. EFRON:  The defense rests.
25             THE COURT:  Members of the jury, both sides have

|  |  |
|---|---|
| 1 | Now, your role in judging credibility applies to |
| 2 | experts as well as to other witnesses.  You should consider the |
| 3 | expert opinions which were received in evidence in this case |
| 4 | and give them as much or as little weight as you think they |
| 5 | deserve.  If you should decide that the opinion of an expert |
| 6 | was not based on sufficient education or experience or on |
| 7 | sufficient data, or if you should conclude that the |
| 8 | trustworthiness or credibility of an expert is questionable for |
| 9 | any reason, or if the opinion of the expert was outweighed, in |
| 10 | your judgment, by other evidence in the case, then you may |
| 11 | disregard the opinion of the expert entirely or in part. |
| 12 | On the other hand, if you find the opinion of an |
| 13 | expert is based on sufficient data, education and experience, |
| 14 | and the other evidence does not give you reason to doubt his or |
| 15 | her conclusions, you would be justified in placing reliance on |
| 16 | his or her testimony. |
| 17 | Before you retire to deliberate, there are a few more |
| 18 | areas I need to instruct you on. |
| 19 | Deliberations must take place in the jury room with |
| 20 | all jurors present.  If any juror leaves the room, say, for a |
| 21 | bathroom break, all deliberations must stop, and may resume |
| 22 | only when every juror is present. |
| 23 | In order to return a verdict, each juror must agree to |
| 24 | such verdict.  You have the duty as jurors to consult with one |
| 25 | another and to deliberate with a view to reaching an agreement, |